(3 Misc. Rep. 1.)

BERKOWITZ et al. v. BROWN.

(Common Pleas of New York City and County, Equity Term. February, 1893.)

1. HUSBAND AND WIFE—DEED BY WIFE TO HUSBAND—VALIDITY.
   A deed by a married woman to her husband, executed prior to Laws 1887, c. 537, which declares that conveyances from a wife to her husband, thereafter made, shall be valid and effectual, was void, absolutely in law and presumptively in equity.

2. SERVICE OF SUMMONS—PRESUMPTION—REBUTTAL.
   In order to rebut the presumption of service of summons as required by law, arising on the rendition of a judgment, the want of such service must affirmatively appear in the record of such judgment, or it must be established in the action wherein the judgment is assailed.

3. HUSBAND AND WIFE—ADVERSE POSSESSION—RUNNING OF STATUTE—POSSESSION BY HUSBAND.
   Where a husband and wife reside on land after the execution of a void deed thereof by the wife to the husband, and their marital relations are uninterrupted, the husband's possession is not adverse, and the statute of limitations does not run in his favor prior to her death.

4. SAME—DEATH OF WIFE.
   After the death of the wife, in such case, the possession of the husband and persons claiming under him is adverse to the wife's heirs.

5. SAME—CONTINUOUS POSSESSION—PURCHASER AT FORECLOSURE SALE.
   Where the heirs of the husband's grantee are dispossessed by foreclosure of a mortgage executed by the wife, to which foreclosure certain heirs of the wife are not made parties, the possession of the purchaser at foreclosure sale is independent, and not continuous of the possession of such grantee's heirs, and cannot be tacked thereto so as to constitute continuous adverse possession for the statutory period as against such heirs of the wife.

6. SAME—INTENT OF PURCHASER.
   Such purchaser having acquired the legal title of such of the wife's heirs as were made parties to the foreclosure, he cannot be said, as a matter of law, to have taken and retained possession under an adverse holding founded on a different claim of title which may have been transferred to him at the same time, instead of under the foreclosure sale, in the absence of evidence showing that such was his intention, though those claiming under him disclaim title through the foreclosure sale.

Action by Moritz Berkowitz and another against Ignatz Brown to enforce the specific performance of a contract for the sale and exchange of certain real estate by plaintiffs to defendant. Judgment for defendant.

A. H. Berrick, for plaintiffs.

A. Stern, for defendant.

BISCHOFF, J.  Plaintiffs agreed with defendant to convey to him their premises, 114 Willett street, in the city of New York, in exchange for his premises, 102 Columbia street. At the time appointed for the exchange of deeds, defendant refused to accept the one tendered him by plaintiffs, on the ground that it did not assure a marketable title, and thereupon plaintiffs brought this action for specific performance of the agreement.

On April 1, 1849, Catharine Wirth joined her husband, Jacob Wirth, in the execution of a mortgage to Samuel Leach upon the Willett street premises to secure the payment of $3,500. On June 25, 1858, it is conceded Catharine Wirth was seised of the premises in fee, and by deed of that date she attempted to convey them directly to her husband. She died in June, 1867, intestate, and without issue, leaving her surviving her husband, said Jacob Wirth, and five sisters and four brothers, Catharine Lafore or Lafour, Phillipina Blaut, Elizabeth Miller, Caroline Gettell or Guttel, Anna Maria Schier, Philip Geib, Nicholas Geib, Adam Geib, and Peter Geib, her only heirs at law. The marital relations of Catharine and Jacob Wirth appear to have been continuous up to the time of her death, and for 14 years immediately preceding the last-mentioned event they resided together upon the premises in question. No issue appears to have been born of their marriage at any time. Upon his wife's death, Jacob Wirth continued in possession until some time in 1870, when he purported to convey the premises to Philip Geib, a brother and one of the heirs at law of his deceased wife, by deed duly executed for such purpose. Philip Geib assumed possession under the deed to him, and so continued until the time of his death. In 1873 or 1874, Philip Geib also died intestate, and left surviving Phillipine, his widow, and five children, Philip, Catharine, Jacob, Charles Peter, and Louisa, his only heirs at law, who continued in possession of the premises until October, 1877. In May, 1877, Silas Davis, to whom the mortgage of Catharine and Jacob Wirth to Samuel Leach had been assigned, commenced an action in the supreme court to foreclose it. At this time all of the heirs at law of Catharine Wirth, except Philip Geib, and the heirs at law of the latter, his five children, were surviving, two of such children and heirs at law of Philip Geib, Charles Peter and Louisa Geib, being then infants under the age of 14 years. Jacob Wirth, the husband of Catharine Wirth, Phillipine Geib, the widow of Philip Geib, and all the surviving heirs at law of Catharine Wirth, except Phillipina Blaut, Caroline Gettell, Anna Maria Schier, Adam Geib, and Peter Geib, as well as the surviving heirs at law of Philip Geib, were made parties defendant to the foreclosure action. Judg-

ment was therein entered, and a sale thereunder had, at which Silas Davis was the purchaser, and under the referee's deed to him, which is dated October 12, 1877, the latter entered into possession. Davis continued in possession until October 16, 1889, when he conveyed the premises to Luny and Parker, who in turn conveyed them, on March 3, 1890, to Bernard Silberstein, and the last-named grantee conveyed them to plaintiffs by deed dated October 1, 1890, under which they obtained and held possession. From the affidavits of service of the summons annexed to the judgment roll in the foreclosure action it appears that Charles Peter Geib and Louisa Geib were served with the summons by delivery of a copy thereof to each of them, but it does not appear therefrom that a copy was also delivered for either to their mother, Phillipine Geib, with whom both infants at the time resided.

Upon the foregoing facts, defendant's counsel contends that plaintiffs' title to the Willett street premises is defective, because the deed from Catharine Wirth to her husband, Jacob Wirth, was void and ineffectual to convey the fee; that upon the death of Catharine Wirth her heirs at law were seised of the premises; that Phillipina Blaut, Caroline Gettell, Anna Maria Schier, Adam Geib, and Peter Geib, five of said heirs at law, were not precluded by the judgment and sale in foreclosure, because they were not made parties to the action; and that Charles Peter Geib and Louisa Geib were not thereby precluded, because it does not appear from the judgment roll that jurisdiction either of their persons or of their property was acquired by service of the summons as prescribed by law. I concur in the view that Jacob Wirth acquired no interest in the premises from his wife's attempted conveyance thereof to him. Before the enactment of chapter 537 of the Laws of 1887, which declares that conveyances from husband to wife, and vice versa, thereafter made, shall be valid and effectual, the deed of a married woman made directly to her husband was void, absolutely in law, (White v. Wager, 25 N. Y. 328; Winans v. Peebles, 32 N. Y. 423; Hunt v. Johnson, 44 N. Y. 31,) and presumptively in equity, (2 Pom. Eq. Jur. §§ 955, 963; Dean v. Railroad Co., 119 N. Y. 540, 23 N. E. Rep. 1054; Darlington's Appeal, 27 Amer. Rep. 726.) To sustain the validity of the deed in equity it was incumbent upon him who asserted it to show affirmatively that it was advantageous to the wife; that it was given not only for valuable, but also for adequate, consideration; and that its execution and delivery were free from the exercise of undue influence by the husband. The mere recital of acknowledgment of the receipt of a consideration was palpably deficient for these purposes. That upon the death of Catharine Wirth intestate, and without issue, her heirs at law were seised of the premises, and that such of them, and the heirs at law of such as had since died, who were omitted as parties to the foreclosure action, or of whose persons or property jurisdiction was not therein acquired, are not bound by the judgment and sale thereunder, are self-evident propositions, which require no discussion. I do not, however, agree with defendant's

counsel that the judgment of foreclosure and the sale thereunder are inoperative respecting the interests of the defendants Charles Peter Geib and Louisa Geib in the mortgaged premises. Both defendants were, at the time of service of the summons upon them, infants under the age of 14 years. The Code of Procedure continued in force, as the Code of Remedial Justice, subsequently designated the Code of Civil Procedure, had not yet taken effect. Laws 1876, c. 448, § 1496, passed June 2, 1876; Laws 1877, c. 416, § 4, passed June 5, 1877. It provided then, (section 134, subd. 2,) as the Code of Civil Procedure now provides, (section 426, subd. 1,) that service of the summons upon an infant defendant under 14 years of age must be made by delivery of a copy to the infant personally, and another to his father, mother, or guardian, or, if there be none within the state, then to the person having the care and control of the infant, or with whom he shall reside, or in whose service he shall be employed; and the omission to deliver a copy of the summons to one of the persons designated as well as to the infant has been adjudged to prevent the acquisition of jurisdiction of the person or property of the latter, and that, as to him, a judgment or decree in the action would be without any force or effect whatsoever. Ingersoll v. Mangam, 84 N. Y. 622; Bellamy v. Guhl, 62 How. Pr. 460. But in both of the cases cited the omission to make sufficient service was affirmatively shown. The presumption is that the court would not have rendered the judgment or made the decree except upon due proof of the service of the summons in the action in the manner prescribed by law, and this presumption is, in the instance of the judgment under examination, materially strengthened by the fact that it recites that it was made upon "reading and filing due proof of the service of the summons and complaint." Precarious, indeed, would the rights sought to be acquired by judicial decree seem if their tenure were dependent upon the safe-keeping of the affidavit or other instrument from which its jurisdiction was apparent to the court when the decree was made. The fact, therefore, that the proofs of service which are annexed to the judgment roll are deficient, in that they do not show sufficient service, does not impeach the jurisdiction of the court to render the judgment which was entered, and in terms precluded the infant defendants of their respective interests in the mortgaged premises. To destroy the presumption of jurisdiction the want of sufficient service of the summons must either affirmatively appear from the record of the foreclosure action, or the fact of nonservice of the summons upon the mother of the defendants Charles Peter and Louisa Geib should have been established in this action. Bosworth v. Vandewalker, 53 N. Y. 597. Neither is the case. As to Phillipina Blaut, Caroline Gettell, Anna Maria Schier, Adam Geib, and Peter Geib, five of the heirs at law of Catharine Wirth, who were not made parties to the foreclosure action, plaintiffs insist that they have acquired title by adverse possession; but an analysis of the evidence adduced on the trial points irrefragably to the contrary.

Adverse possession of sufficient duration operates to transfer the title and right of possession of the true owner to the possessor as effectually as if conveyed by deed, (Baker v. Oakwood, 123 N. Y. 16, 25 N. E. Rep. 312;) but to have that effect it is not enough that the true owner has not been in actual possession for 20 years and upwards. It must appear that the person claiming under adverse possession, and those under whom he claims, have been in continuous possession under the same claim of title, exclusive of any other right, for not less than the statutory period. Code Civil Proc. §§ 368, 369; Buttery v. Railroad Co., 14 N. Y. St. Rep. 131; Casey v. Dunn, (Super. N. Y.) 8 N. Y. Supp. 305; Baker v. Oakwood, supra; Ward v. Warren, 82 N. Y. 265; Jackson v. Burton, 1 Wend. 341; Jackson v. Johnson, 5 Cow. 74; Doe v. Thompson, Id. 371; Thompson v. Burhans, 79 N. Y. 99; Bliss v. Johnson, 94 N. Y. 235; Sherman v. Kane, 86 N. Y. 57. If adverse possession once commenced ceases within 20 years, the possession will be deemed to have been returned to the owner of the legal title. Bliss v. Johnson, 94 N. Y. 235. The dispossessor of him who has the legal title, or the persons claiming under the dispossessor, must not have recognized the legal title within 20 years. Mayor, etc., v. Mott, (Sup.) 15 N. Y. Supp. 23; Greene v. Couse, 127 N. Y. 386, 28 N. E. Rep. 15; Jackson v. Britton, 4 Wend. 507; Jackson v. Cuerden, 2 Johns. Cas. 353; Same v. Croy, 12 Johns. 427; Same v. Given, 8 Johns. 107; Same v. Smith, 13 Johns. 406; Northrop v. Wright, 7 Hill, 476; Dietrick v. Noel, 42 Ohio St. 18; 1 Amer. & Eng. Enc. Law, p. 272; 6 Lawson, Rights, Rem. & Pr. p. 4403. Nor can several successive and independent possessions be "tacked" to make adverse possession of sufficient duration. 6 Lawson, Rights, Rem. & Pr., p. 4405; 1 Amer. & Eng. Enc. Law, p. 269. To render the successive possessions of several persons continuous, there should appear to be some privity of title or possession between them. At common law the husband was entitled to possession of his wife's lands during coverture, and to the usufruct thereof. Tyler, Inf. c. 22, § 260, p. 393. He therefore obtained possession as of right and in subordination of his wife's seisin. His possession was her possession, and to urge that he was in possession in hostility to his wife's right of possession is to maintain that he could hold adversely to himself. Hence the doctrine of adverse possession never applied as between husband and wife. 1 Amer. & Eng. Enc. Law, p. 250, § 18, tit. "Adverse Possession." The act of 1848, as amended in 1849, (Laws 1848, c. 200; Laws 1849, c. 375,) enabled a married woman thereafter to acquire and hold land with like effect as though she were a feme sole, but did not otherwise destroy the legal unity of husband and wife. His place of residence remained her residence, and her possession of his dwelling house remained his possession. Adverse possession of the Willett street premises, therefore, by Jacob Wirth, as against his wife, is not predicable of his residence there, it appearing at the same time that she resided with him, and that their marital relations continued uninterruptedly up to the time of her death. Dunham v. Townshend, 118 N. Y. 281, 23 N. E. Rep. 367. See, also, Vandervoort v. Gould, 36 N. Y. 639. No issue was

born of their marriage; hence Jacob Wirth, upon his wife's death, was not entitled to continue in possession of his wife's realty as tenant by the curtesy, (1 Washb. Real Prop. c. 6, § 7,) as otherwise he would have been, (Hatfield v. Sneden, 54 N. Y. 280;) and for the purposes of this action we will therefore assume that immediately upon his wife's death, in June, 1867, Jacob Wirth's continuance in possession became adverse to the right of possession of her heirs at law, and that this adverse possession was transferred to his grantee, and descended to the latter's heirs at law    Those in possession under Jacob Wirth, however, were themselves turned out by the entry into possession in October, 1877, of Silas Davis under the referee's deed in foreclosure to him.    Any adverse possession, therefore, having its origin in Jacob Wirth's continuance in possession after his wife's death, came to an end after a duration of only little more than 10 years.    On the trial plaintiffs disclaimed the accruement to them of any title to the premises or right to the possession thereof through the foreclosure action, and obviously, if the disclaimer be persisted in, there is no privity either of title or possession between them and Jacob Wirth, or those deriving possession under him.    In so far as the adverse possession having its origin with the entry of Silas Davis is concerned, it was wholly independent, therefore, of those ousted or dispossessed by him.    On the other hand, if the disclaimer of the accruement of title or right of possession through the foreclosure action be withdrawn, and it be now insisted that the judgment or foreclosure therein and the sale thereunder operated to transfer the possession of those claiming under Jacob Wirth to the purchaser, then it must be conceded that the judgment and sale effected a like transfer of the right of possession and legal title of such of the heirs at law of Catharine Wirth who were made parties defendant to the action; and the fact of their having been made such parties to bar them of the equity of redemption and their right of possession, with the further fact that the purchaser under the foreclosure sale entered into possession under the judgment and sale to him, amounts to an unequivocal admission of the legal title in the heirs at law of Catharine Wirth at the time of foreclosure.    There is nothing to indicate that Silas Davis entered and continued in possession pursuant to the transfer of Jacob Wirth's adverse possession to him, rather than under the transfer of the legal title of Catharine Wirth's heirs at law to him, supposed to have been accomplished by means of the foreclosure action. Hence the adverse possession of Jacob Wirth, commencing with the death of his wife, in June, 1867, cannot be said to have continued after Davis entered into possession, in October, 1877.    Adverse possession depends upon the intention of the possessor to hold adversely.    Culver v. Rhodes, 87 N. Y. 348; Jackson v. Thomas, 16 Johns. 293.    The presumption always is, until the contrary appears, that the person in possession has derived it from and holds it with the consent of the owner of the legal title.    Code Civil Proc. § 368.    A claim of adverse possession, therefore, necessarily requires strict proof to substantiate it, (Jackson v. Sharp, 9 Johns. 163; Schwall-

back v. Railway Co., [Wis.] 34 N. W. Rep. 128,) and until it has ripened into title nothing will be presumed in its favor, (American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 260, 29 N. E. Rep. 302.) Davis, the purchaser, having, by means of the foreclosure sale, acquired the legal title of such of the heirs at law of Catharine Wirth who were made parties to the action, and who, with the heirs omitted as parties, were entitled to rightful possession of the premises as tenants in common, he cannot, as matter of law, be said to have entered into and retained possession under an adverse holding founded upon a different claim of title, which may have been transferred to him at the same time, in preference to the rightful possession secured from some of the heirs at law who were legally entitled to possession, in the absence of evidence demonstrating that such was his intention. American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 260, 29 N. E. Rep. 302. Hence, it cannot be successfully urged in this action that there was a continuity of adverse possession originating with Jacob Wirth upon the death of his wife, in June, 1867, under the same claim of title, and exclusive of any other right, (Code Civil Proc. § 369,) after Davis' entry in October, 1877, under the foreclosure sale to him. Davis' claim of title and right of possession is founded upon the foreclosure judgment and sale, and, in so far as his possession is adverse to the claims of the heirs at law of Catharine Wirth, it has not yet endured for 20 years, and is ineffectual as a bar.

For the reasons stated, I am of the opinion that such of the heirs at law of Catharine Wirth who were not made parties to the foreclosure action may still recover their rights or interests in the Willett street premises; that plaintiffs, therefore, did not, and cannot now, tender defendant a title to or right of possession of the premises free from reasonable doubt. Pom. Spec. Perf. Cont. § 198; Kilpatrick v. Barron, 125 N. Y. 751, 26 N. E. Rep. 925. Judgment must therefore be for defendant, with $250 damages, besides the interest thereon, and the costs of this action.