(70 Misc. Rep. 327.)

## TIMMERMANN v. COHN et al.

(Supreme Court, Special Term, Kings County. January, 1911.)

1. HUSBAND AND WIFE (§ 16*)—REAL ESTATE OF WIFE—HOSTILE POSSESSION.

Possession by a husband of his wife's property is not adverse to her so long as coverture continues.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 100–106; Dec. Dig. § 16.*]

2. ADVERSE POSSESSION (§ 63*)—HOSTILE NATURE OF POSSESSION.

Where a husband built on his own land and extended his building so as to cover a strip of adjoining lands, of which his wife was the owner, and the wife and her husband conveyed the wife's lands by a description including the strip covered by her husband's building, the husband's possession of the strip was adverse to the grantee from the time title passed to him; he having knowledge of the facts.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 63.*]

3. ADVERSE POSSESSION (§ 33*)—NOTORIETY OF POSSESSION—EVIDENCE.

Evidence *held* to show that a grantee of land knew when he took the deed that part of the land conveyed was in the adverse possession of another, and had been so for 14 years.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 33.*]

4. ADVERSE POSSESSION (§§ 70, 85*)—HOSTILE POSSESSION—EVIDENCE.

Claim of title may be evidenced by acts alone as well as by assertion, and possession accompanied by the usual acts of ownership is presumed adverse till shown to be otherwise.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 394, 498; Dec. Dig. §§ 70, 85.*]

5. ADVERSE POSSESSION (§ 11*)—INTENTION OF PARTIES.

Adverse possession depends on the intention of the person in possession to hold adversely to every other title, and that intention can at all times be best ascertained by the acts of the person in possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 67–69; Dec. Dig. § 11.*]

6. CHAMPERTY AND MAINTENANCE (§ 7*)—MORTGAGES (§ 427*)—LAND HELD ADVERSELY—FORECLOSURE—NECESSARY PARTIES.

Where part of land mortgaged was covered by a building on adjoining premises and claimed adversely, the mortgage was void under Real Property Law (Laws 1896, c. 547) § 225, making grants of land void, where it is in the actual adverse possession of another than the grantor, and hence the mortgagee was not a necessary party to the foreclosure of a subsequent mortgage on the adjoining land and building.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 54–110; Dec. Dig. § 7;* Mortgages, Cent. Dig. § 1284; Dec. Dig. § 427.*]

7. DEEDS (§ 139*)—EXCEPTION—VALIDITY.

The owner of land erected a building which extended over a strip belonging to an adjoining owner, and obtained title to the strip by adverse possession. A subsequent owner of the building conveyed it by deed expressly excepting so much as was included in the strip by metes

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and bounds. *Held*, that the exception was repugnant to the grant of the realty and its appurtenances, and invalid.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 458; Dec. Dig. § 139.*]

8. DEEDS (§ 139*)—EXCEPTIONS—VALIDITY.

An exception in a deed in favor of one not a party to the instrument is invalid.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 139.*]

9. DEEDS (§ 93*)—CONSTRUCTION—INTENT OF PARTIES.

The intent of the parties to a deed must be gathered from its language.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 231; Dec. Dig. § 93.*]

Action by Carl Timmermann, as executor, etc., against Isidor Cohn and others to foreclose a mortgage. The purchaser at the sale moved to be relieved of her bid and to be repaid the deposit, and plaintiff moved for a resale. Motion of purchaser denied, and motion of plaintiff granted.

Huberty & Greifenstein, for plaintiff.
A. Stephen Aaronstamm, for purchaser.
Leopold Levy, for defendant Cohn.

MADDOX, J. Action for foreclosure of mortgage covering real property, sale had pursuant to a judgment therein, and, the purchaser refusing to complete because of certain asserted objections to the title tendered, two motions are made; i. e., one by the purchaser to be relieved from her bid, to be repaid the 10 per cent. of the sum bid, also her incidental expenses and for such further relief as she may be entitled to, and the other by the plaintiff for a resale, pursuant to said judgment, of said mortgaged premises.

The purchaser presents three grounds of objection, all of which relate to a gore-shaped piece of land forming a part of the rear of the premises described in said mortgage and judgment. From the papers, including the survey, it appears that all of said mortgaged premises are covered by a brick building the walls of which are party walls and run along the exterior lines of said gore; in other words, all of said gore is embraced within the walls of and is in fact physically covered by a brick building three stories high, fronting upon and known as Nos. 665 and 667 Broadway, a leading business thoroughfare in that section of Brooklyn. The mortgaged premises, excepting said gore, were conveyed to one John F. Battermann in February, 1873. The premises immediately adjoining on the south and east thereof, and then including said gore, were conveyed in July, 1865, to Sophia Battermann, wife of said John F. The brick building, as it now stands on said mortgaged premises, and said party walls embracing said gore, were erected or reconstructed about the year 1875, and at the time of the commencement of this action—notice of lis pendens was filed April 20, 1910—had been standing about 35 years. The building was then in the possession of the owner, John F. Battermann, and that possession and the use of the whole building, which,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as said before, included said gore and all of it, was certainly visible and open. From the physical conditions existing during all that period of time the fact that the gore was covered by a part of the building and that the possession of the building included possession of the gore was most notorious, since access to any part of the gore was necessarily through that building only, not from the outside.

The executor of John F. Battermann, deceased, in May, 1906, conveyed the premises described in the mortgage foreclosed to one Isidor Cohn, who executed and delivered the mortgage in question to secure a part of the purchase money for such conveyance. It appears that Sophia Battermann continued the owner of the premises so conveyed to her in 1865 until December 28, 1889, when, her said husband joining with her therein, she conveyed the same by the same description as in the deed to her to William Battermann, their son, which deed was recorded December 30, 1889. In the deed to William Battermann it is expressly declared that the "description is intended to include and this deed to convey in fee simple, and does hereby include and convey, all the right, title and interest of the said Sophia Battermann, of the first part, in and to any real estate which she may have owned in her own name and right and has not heretofore conveyed on the plot of ground bounded by Ewen street, Varet street and Broadway, being the same premises conveyed" to her by the deed of 1865 before referred to, and the covenants, including that of warranty, are by Sophia alone. The purchaser's counsel has not called attention to or asserted that there are any conveyances of record by Sophia of any part of the premises conveyed by the deed of 1865, recited in the deed to William. If there were no such conveyances by her, and in the absence of proof to the contrary we may, I think, assume there were none, then is not that declaration significant when we consider the fact of the erection by her husband of his adjoining building upon and over the gore of land in question, an encroachment of over seven feet on one line of that gore and about four feet along another? But that can be no aid to us in solving the questions presented, since it is no evidence of any grant to him, or of any permission, assent or acquiescence by her in or to such encroachment by him upon her land. It furnishes no proof that he held adversely or in hostility to his wife's title.

[1] Indeed, so long as coverture continues, neither the husband nor the wife can invoke as against the other the doctrine of adverse possession. 1 Am. & Eng. Ency. of Law, 820; 1 Cyc. 1005; Berkowitz v. Brown, 3 Misc. Rep. 1, 23 N. Y. Supp. 792. And attention may here again be called to the fact of John F. Battermann's joining with his wife in the conveyance to their son of the wife's property by a description which includes the gore in question, an act in itself, in my opinion, negativing any intention on his part of holding adversely to his wife.

[2] But a different situation is presented as to the grantee, William Battermann. As to him the holding was adverse and hostile from the time title to the adjoining property vested in him. The physical occupation of the gore was of itself notice to him of an adverse

possession and he knew it, since he took title with full knowledge of the fact that the gore was included within the walls .of his father's building, and also the length of time the building and the walls thereof had stood.

[3] It appears that William has by affidavit verified September 14, 1910, and now in the possession of Mr. Thomas E. Pearsall, the referee herein, and a copy of which affidavit is appended to plaintiff's papers, made oath that he recollects when the buildings Nos. 665 and 667 Broadway were erected by his father, and "that the same were so erected or built more than thirty. years prior to the date of 'his' affidavit, and that to the best of 'his' recollection it was some time during the year 1875," and, further, "that the walls at such time erected are the same as now upon said premises; that the original walls were never destroyed by fire or otherwise." No better evidence can be looked for or had than that furnished here by the person against whom the adverse possession is claimed, and when his declarations and statements are against his interest and in support of the assertion of an open, visible and notorious adverse possession. And, again, there is the affidavit of Mr. Huberty, verified September 15, 1910,. as to the erection of said building and the walls thereof in 1875, and the fact that the same are now as they were at that time.

At the time of conveyance to William, his father, John F. Battermann, was the owner and in actual possession of the building then and still standing upon the premises in question here. His claim of title was to the whole thereof, and that of necessity included the land on which it stood. He and his successors in title have so continued in uninterrupted, and, so far as appears here, in undisputed, possession of said building and premises until this time, a period of more than 21 years, and more than 20 years had elapsed before the commencement of this action. No claim of title founded on a written instrument, judgment, or decree is made here, and it may well be urged that there is no evidence of any oral claim of title by John F. Battermann or of his successors in the record title; [4] but that is not essential, since as held in Barnes v. Light, 116 N. Y. 34, 39, 22 N. E. 441, 442:

"A claim of title may be made by acts alone, quite as effectively as by the most emphatic assertions."

And again:

"Possession, accompanied by the usual acts of ownership, is presumed to be adverse until shown to be subservient to the title of another." Id., 116 N. Y. 40, 22 N. E. 442.

This has been the recognized rule since 1826, when La Frombois v. Jackson, 8 Cow. 589, 18 Am. Dec. 463, was decided. See, also, Hindley v. Manhattan R. Co., 185 N. Y. 353, 355, 356, 78 N. E. 276; Campbell v. Holt, 115 U. S. 620, 623, 6 Sup. Ct. 209, 29 L. Ed. 483; Baker v. Oakwood, 123 N. Y. 16, 27–30, 25 N. E. 312, 10 L. R. A. 387, and cases cited.

[5] Adverse possession depends on the intention of the person in possession to hold adversely to every other title, and that intention can at all times be best ascertained by tne acts of the person in possession. Here we have proof of the adverse and hostile occupation

and possession of the piece of land included within the gore, accompanied with the usual acts of ownership of property in a large and populous city, continuously and without interruption for a period of more than 20 years, and any title and right of entry which William Battermann may have had are lost. The bar of the statute of limitations (Code Civ. Proc. §§ 365, 366, 371, 372) has run, and the purchaser's first ground of objection is without merit, since, as held in Baker v. Oakwood, supra, "a clear adverse possession for twenty years constitutes a title which a purchaser at a judicial sale may not refuse."

[6] The claim that the Germania Savings Bank is a necessary party to this action and has a mortgage lien upon the gore piece of land before referred to is not well founded. That mortgage was prior to the one here foreclosed, and was given by said William Battermann and his wife to the bank in September, 1898, at which time the land included in said gore was, and for more than eight years previously had been, held and actually occupied and possessed by said John F. Battermann adversely to the said mortgagor, William Battermann, as is evidenced by said William Battermann's affidavit before referred to. The provisions of section 225 of the real property law (Laws of 1896, c. 547) were then controlling, and hence, as against the "person claiming under a title adverse to that of the" mortgagor, the mortgage was void. The mortgagor has not recovered possession, and there has been and there is now no estate or lien in or against said premises in favor of the Germania Savings Bank. See De Garmo v. Phelps, 176 N. Y. 455, 68 N. E. 873; Real Prop. Law (Consol. Laws 1909, c. 50) § 260.

[7] The purchaser also contends that, if good title as against William Battermann by adverse possession has been acquired, there is still outstanding the title of one Charles Katz to the gore in question. The premises described in the mortgage were conveyed to Katz in August, 1906, subject to said mortgage. In March, 1907, he conveyed the same to Lesinsky, excepting therefrom so much, however, as was by metes and bounds included in said gore. In June, 1908, Lesinsky's executors conveyed the same premises with the same exception to said Katz, who conveyed, by deed of the same date as the above, the same premises to the defendant Maurice Rosier, but again excepting therefrom said gore.

[8] It is to be noticed that Katz expressly excepted the gore in question from the grant. That exception by him was not necessarily an assertion of title in himself, nor can it inure to the benefit or advantage of another person. That which was excepted was inseparable from the grant and inaccessible save through that which was granted and conveyed by him. It was inconsistent with the grant, which was covered in its entirety by the three-story brick building, which, together with the land on which it stood, had been so conveyed by him. The substance of the grant was the realty and its appurtenances, and the exception being repugnant to the grant is therefore void.

[9] The intention of the parties to the deed must be gathered from the language thereof, and an exception in favor or for the benefit of

one not a party to the instrument is void. Blackman v. Striker, 142 N. Y. 555, 561, 37 N. E. 484. That which was excepted cannot be physically enjoyed by the grantor or result in any honest benefit to him, if to be availed of it would be in derogation of his grant, which included the building, and hence the exception is in effect as large as the substance of the grant. The subsequent clause in the Katz deed of conveyance must, therefore, be held ineffectual to cut down or lessen the grant contained in the prior clause, or to lessen the effect of that grant.

It therefore follows that this last objection must be resolved against the purchaser, and it is unnecessary to give consideration to the other questions presented.

Motion by the purchaser to be relieved from her bid and repaid the moneys expended by her is denied, with $10 costs of motion. Motion by the plaintiff for a resale is granted, but let the purchaser have 20 days wherein to complete her purchase, if she so desires, in which event the direction for a resale will be vacated and set aside.

Let the original affidavits of Mr. Huberty, verified September 15, 1910, and William Battermann, verified September 14, 1910, and the original survey, be filed as a part of the papers on the motion to be relieved from the bid. Let an order covering both motions be settled on notice, the counsel for the respective parties to previously agree upon the recitals.

Ordered accordingly.