## Brown *vs.* Lynch.

*In the matter of the guardianship of* Thomas R. Lynch.

The Surrogate has jurisdiction to grant letters of guardianship only in case of minors residing in the county.

Where the parents resided and were married in the State of Connecticut, and the child was born there, the father having previously removed to New York, where the mother, after the birth of her infant, joined him— *Held*, that the original domicil of the minor was that of his parents at the time of his birth.

On the death of the father, the establishment in New York having been broken up, and the mother, with her child, removed to the residence of her parent in Connecticut—*Held*, that the domicil of the minor was changed to that State.

The mother having married again, and left Hartford to reside at New York with her husband—*Held*, that although by marriage she adopted the domicil of her husband, the domicil of the child was not thereby changed.

The mother, after the father's death, may change the domicil of her children, provided it be without fraudulent views to the succession of the estate. The domicil of the children does not necessarily follow that of the surviving mother; for, although changing her own, she may, from wise motives, refuse to alter that of the child. The presumption, however, is, that their domicil follows hers. But this rule does not obtain on the second marriage of the mother. By that act she acquires the domicil of her husband, and loses all power to control that of her children.

Although the *forum* of the minor may follow that of the surviving mother, yet on ·her decease the forum of the minor is restored to the place of his domicil.

Wm. C. Freeman, *for Petitioner.*
Charles Butler, *for Guardian.*

The Surrogate. This is an application to revoke the letters of guardianship granted to the aunt of Thomas R. Lynch, October 14, 1852, on the ground that the minor was not, at the time, a resident of this county. There is no dispute in regard to facts; and the only question is as to the conclusions of law.

The child was born at Hartford, Connecticut, at the house of his maternal grandmother, Mrs. Raphel. His parents resided in that State at the time of their marriage. At the time of his birth, his father had removed to New York, where he was afterwards joined by his wife. They continued to reside in this city until Mr. Lynch's death, in June, 1846, when the establishment here was broken up, and Mrs. Lynch and her son returned to the house of her mother, at Hartford. There they continued to live until Mrs. Lynch's marriage with Francis Brown. Mrs. Raphel says, "at the time of the marriage, it was understood between Mr. Brown, his wife and myself that the boy should make his home with me. He remained with me. His mother moved directly to New York, where she remained till she died," in February last. On the 29th of January,

1850, Mr. Brown was appointed guardian of the minor by the Judge of the Court of Probate for the district of Hartford. The boy, for several years, has been at school at Hartford, and at Wilton, Connecticut, and in vacation returned to his grandmother's house, where he boarded until his return to school. She had the entire charge of him in every respect, except the payment of his expenses. During the lifetime of his mother, he spent some portion of his vacations with her in New York; but it does not appear that he has been in this city since his mother's decease, except for a week in the beginning of October last. He was brought here by his teacher, who is in the habit of bringing his scholars from Wilton, and dismissing them in New York.

There has been much and learned discussion in relation to the residence of minors, especially among the civilians. Authorities of great weight and distinction have differed materially as to the manner in which a change of the minor's domicil may be effected, particularly as to the power of the guardian, or of the mother after the decease of the father. (*Phillimore on Domicil*, § 57.) I have no doubt, however, that the weight of modern authority is in favor of the proposition that the surviving mother may change the domicil of her minor children, provided it be without fraudulent views to the succession of their estate. This power did not exist in the Roman law, which may account for the resistance it has met. It is supported by the authority of Bynkershoek, Voet, and Pothier, Sir Wm. Grant, Justice Story and Chancellor Kent. (*Potinger* vs. *Wightman*, 3 *Merivale*, 67; 2 *Kent's Com.*, *pp.* 227, 430; *Burge's Com.*, 1, *p.* 39.) To state, however, that the residence of the mother is necessarily the residence of the child is too broad a position; for the power of effecting the change may very well exist without being exercised, and the mother's residence may be altered while at the same time she refuses to alter that of the child. Where, however, nothing more appears than the removal in fact of the

mother and her children from one abode to another, the presumption would be that the domicil of the child has followed that of the parent.

Applying these principles to the present case, it appears that the residence of the minor, Thomas R. Lynch, which, at the decease of his father, was in the city of New York, became changed to the State of Connecticut by the removal of his mother. The family establishment in this city was broken up, and she returned to the residence of her mother, the place of the boy's nativity, and the State where she and her husband were domiciled at the time of their marriage. There certainly could have been no doubt then, and during the years that elapsed before her second marriage, that the child resided in Connecticut. That the mother should return to her home, after the only tie was dissolved which had bound her to a residence in New York, was the most natural thing in the world. All her interests and attachments were manifestly centered there; and after her removal, that must undoubtedly be considered as the place of her permanent abode. The domicil she had acquired in New York, by the occasion of the removal of her husband here after marriage, ceased, and her original domicil was restored. The case is obviously stronger than a change of domicil to some entirely new place of abode.

But she marries again, and leaves Hartford to reside at New York with her husband. It is a universal maxim that the wife takes the domicil of the husband. (*Digest*, 50, 1, 37; *Code*, 12, 1, 13, 10, 40, 9; *Warrender* vs. *Warrender*, 9; *Bligh*, 89.) But was the residence of the minor changed by that act? In the first place, if it were true that the domicil of the minor follows that of the surviving mother, *on her second marriage*, it seems to me plain that it is not a matter of legal necessity. The mother is not *compelled* to change the residence of her child. She may, from wise and prudential motives respecting the comfort, happiness, or education of her offspring, determine not to change his residence. And if such determination be evinced and

acted upon, the inference that might be drawn, that the domicil of the child followed that of the parent, is rebutted and destroyed. The ordinary presumption of law (if it existed in such a case), would give way before express and positive *acts* subversive of all inferences and presumptions. If, while the mother continues in her widowhood, it is within the scope of the parental authority, when she changes her own domicil, not to change that of her child, the moral reasons for such a power would be much stronger in the event of a second marriage, supposing she still retained any capacity to effect a change of her own domicil. But she does not. By the act of marriage she takes the domicil of the husband; and to hold that the domicil of the child is drawn after hers, would be to establish an arbitrary train of sequences unsupported by reason. The mother subjects herself to the control of another husband, and adopts his home; and when she ceases to occupy an independent position as the head of the family, she cannot delegate to another a personal trust residing in her for the welfare of her children. I have no hesitation in saying that the proposition is unsound, which maintains as a necessary legal consequence that the domicil of the child follows that of the step-father. Children, says Pothier, have the domicil their mother establishes, without fraud, so long as remaining in widowhood she preserves the quality of chief of the family; but when she remarries, and thus acquires the domicil of her second husband, into whose family she passes, the domicil of the second husband does not become that of the children, who do not pass into the family of their step-father, but preserve their domicil where their mother had hers before she remarried, as they would have preserved it had she died. (*Pothier, Introd. aux Coutumes, p.* 9, § 19; *See Inhabitants of Freetown* vs. *Inhabitants of Taunton,* 16 *Mass. R.,* 52; *School Directors* vs. *James,* 2 *Watts and Serg.,* 568.) It may be said that these principles apply only to the domicil so far as relates to the question of succession, and that the *forum* of the minor is that of the surviving

mother or guardian.   Even if that were so, I think that on the decease of the mother it was restored to the place of the minor's domicil.   But, however that may be, the jurisdiction of the Surrogate expressly depends, by the terms of the statute, on the *residence* of the minor.   Here, in the lifetime of the mother, the court of the place where the minor had his domicil appointed the step-father guardian; and neither the mother or guardian ever changed the residence of the child, in fact, or applied to the *forum* of the parents for judicial action.   The actual and the legal domicil of the minor, and the *forum* appealed to, all unite to fix the place of residence in Connecticut, and not in this State.   The mother, on her second marriage, came to an understanding with her husband, that the boy should make his home with the grandmother, in whose house he had been living; and the subsequent conduct of the parties was invariably in harmony with this understanding.   The arrangement was in consonance with the law, and the rights of the minor, and was never disturbed.   I am therefore of opinion that, on the marriage of his mother, the child's residence was not, by legal consequence, changed from Connecticut to New York, because his mother acquired the domicil of her second husband; and that if such change would have been effected in the absence of a contrary arrangement, it would have been prevented by the acts and conduct of all the parties, and the continued residence in fact, of the minor, in the State of Connecticut.   The letters of guardianship issued by me must therefore be revoked. The question presented being somewhat novel, costs are not allowed to either party.