of the ballot itself.    These voters followed the instructions printed upon the stub of the ballot pursuant to the directions of the statute itself,—directions obviously intended to be not only a summary of the law, but the voter's immediate guide, entirely sufficient for his purpose during the very limited time in which he was permitted to hold and mark his ballot before depositing it.    These instructions, found in the statute itself and upon the official ballot, are our sufficient warrant for holding that these voters ought not to be deprived of their right of suffrage because there were in the same statute some directions about a "voting space,"—directions excluded from those to which the statute directed his attention, directions from which his attention was diverted by the very directions to which his attention was called, as the last final ones that he should follow.    In such a case, where the law may admit of two constructions, that which is most in harmony with the constitution should prevail.

I therefore vote to affirm the order appealed from.

(20 Misc. Rep. 470.)

### STEINHARDT v. BAKER.

#### (Supreme Court, Special Term, New York County.  June, 1897.)

1. SUMMONS—AMENDMENT—ADDITIONAL PARTIES.
    An order amending the summons in a foreclosure suit by striking out the name of a defendant, and adding "additional defendants," who are not named, though indefinite, is not invalid when the persons intended are actually made defendants, and judgment rendered against them.

2. SAME—SUBSTITUTED SERVICE—INFANTS.
    The provisions of Laws 1853, c. 511, as amended by Laws 1863, c. 212, relating to substituted service, applied to infants as well as other defendants.

3. SAME—WHEN SUBSTITUTED SERVICE IS JUSTIFIED.
    If it clearly appears from proof, upon an application for an order for substituted service of summons, that the party cannot be found, an order for such service is not irregular or imprudently granted, though appearing on its face to be made on the ground of evasion of service.

4. SAME—EVASION OF SERVICE—INFANTS.
    The act of the mother of infant defendants in an action, with whom they reside, in refusing access to them for the purpose of serving process upon them, must, in law, be held to be the act of the infants, and justifies an order for substituted service upon them on the ground that they evade service.

5. SAME—AFFIDAVIT OF SERVICE—SUFFICIENCY.
    It is not necessary that an affidavit of service of process, though referring to an "annexed summons," should in fact be annexed to the summons, but it is sufficient if the court can find as a fact, from the contents of the affidavit, or from the proceedings for the appointment of a guardian ad litem or otherwise, that the summons was in fact served.

6. SAME—JUDGMENTS—COLLATERAL ATTACK.
    A recital in a judgment of the service of process is prima facie evidence of service, and sufficient, when the judgment is attacked collaterally, to show that the court acquired jurisdiction.

7. SPECIFIC PERFORMANCE—WHEN DECREED—DELAY.
    Plaintiff made a contract with defendant to buy certain real estate, the price being fixed below the actual value of the property, in consideration of its being paid in cash.  At the time fixed for closing, plaintiff objected to defendant's title, and afterwards brought suit for specific performance,

or, in the alternative, for damages. *Held*, plaintiff's objections to the title having been found to be without merit, and defendant not asking specific performance, that the same should not be decreed, but plaintiff's complaint should be dismissed, with costs.

Action by Morris Steinhardt against John O. Baker for specific performance of a contract to convey land, or, in the alternative, to recover the amount paid on the price, and for damages. Complaint dismissed.

Frayer & Seaman (Eugene Frayer, of counsel), for plaintiff.
Charles E. Miller, for defendant.

McLAUGHLIN, J.   On the 8th day of November, 1895, the parties to this action entered into a contract of sale, in and by which the defendant agreed to sell and the plaintiff to purchase certain real estate situate in the city of New York for the sum of $65,000, and the plaintiff then paid, to apply on the purchase price, the sum of $2,000. On the 13th of January following, the time fixed for the completion of the contract, the defendant tendered to the plaintiff a deed, proper in form, and the plaintiff was ready and willing to pay the balance of the purchase money, but he objected to the defendant's title, which is derived from a sale made in pursuance of a judgment of foreclosure in 1877 in the action of Freeman against Bull and others, upon the ground that the foreclosure proceedings were defective, in that the court never acquired jurisdiction of certain parties defendant, and that the title was not marketable. When the foreclosure proceeding referred to was instituted, one William Fitzpatrick held the title to the land in question, subject to the mortgage then sought to be foreclosed, and he and his wife, Adele C., were made parties defendant, and, as such, were duly served with a copy of the summons; but before judgment William died, leaving six infant children. Steps were thereafter taken to make these children parties defendant in the action in the place of their father; and whether the proceedings taken were sufficient to accomplish that purpose is the principal question to be determined in this action. The plaintiff insists that the court never acquired jurisdiction of these infants so as to deprive them of the equity of redemption, and that defendant's title is, therefore, defective. His objection is based upon the following alleged defects in the foreclosure proceedings, which will be considered in the order named: (1) That the summons was never legally so amended as to make these infant children proper parties defendant to the action. (2) That the statute under which substituted service of the summons was made on the infants was never intended to apply to infant defendants, and it did not authorize substituted service on them. (3) That the order directing substituted service on the infants did not provide that a copy of it should be served upon the parent, guardian, or other person with whom they resided. (4) That no copy of the summons was, in fact, served upon the parent, guardian, or other person as a part of the service on the infants under the order. (5) That sufficient proof of service of the summons on the infant defendants was never made in the action.

1. The order was granted upon an affidavit showing that the time to answer or demur had expired, and that none of the defendants had either answered or demurred except the defendant William Fitzpatrick, and that he had died, leaving six children, two over and four under the age of 14 years. The order asked was that the summons and complaint be amended "by striking out the name of the defendant William Fitzpatrick, and by adding additional parties defendant thereto." This the order did. And while it is true that the order was indefinite as to the "additional parties defendant" to be added, it, however, does not follow that by reason thereof it was rendered invalid. And in this connection it must be borne in mind that no one was affected or injured by the amendment permitted under this order. The mother of the infants could not complain, because she was already in default; and the representatives of the father likewise could not complain, because no judgment against his estate was asked for or rendered. The infants represented the fee upon the death of the father, and they were only affected by the proceedings to foreclose subsequent to the amendment. The order, therefore, was valid, so far as these infants were concerned, since they were actually made defendants to the action by virtue of it, and the criticism now made cured by the judgment thereafter rendered.

2. The action to foreclose was commenced May 1, 1877, and the provisions of chapter 511, Laws 1853, as amended by chapter 212, Laws 1863, in relation to substituted service, were applicable. Laws 1876, c. 449, § 5, subd. 4. This statute provided for substituted service in two cases: (1) Where a defendant, residing in the state, could not be found, (2) or, if found, avoided or evaded service; and, in my opinion, was applicable to all defendants, including infants. The title of the act, as well as the language used, seems to negative any other conclusion. It was "An act to facilitate the service of process in certain cases," and provided for service on "any defendant." It is true, infants were not, in express terms, mentioned or referred to in the act, but the use of the words "any defendant," indicates as clearly as language can an intent to include them; and to hold otherwise is to impute to a legislative body ignorance of the meaning of the word "any," or else by judicial sanction give to such word a meaning not usually accorded to it. If I am correct in the conclusion that this statute applied to service upon infants, then the infants in question were, under the facts presented, clearly brought within the provisions permitting substituted service upon them, on the ground that they could not be found, "reached," "got at." And therefore "the order for substituted service was not irregular, or imprudently granted, notwithstanding it appears on its face to have been made on the ground of an avoidance or evasion of service, and not upon the ground above considered. Every intendment is in favor of jurisdiction, and jurisdiction does not depend upon the intention of the officer or tribunal undertaking to act. The question is, does the law authorize the act?" Carter v. Youngs, 42 N. Y. Super. Ct. 169. I am also of the opinion that the proofs presented justified the granting of the order upon the ground that these infants evaded or avoided service. In reaching this conclusion I am not unmindful of the suggestion of the plaintiff

that to avoid service implies the legal capacity to think and reason, and that the statute presupposes that a defendant knows that process has been issued for service upon him, and that, having this knowledge, he eludes the officer. But the act of the mother must, in law, be held to be the act of the infants. When the officer served the amended summons upon her, she had the care, custody, and legal control of her infant children, and in thus acting for them she refused to let the officer make service upon them. This principle of the law has heretofore been applied and acted on. Thus, in Morrison v. Railway Co., 56 N. Y. 302, where a father took an infant 12 years of age under his arm, and stepped from a car while in motion, and the child was injured, the court held that the child was chargeable with contributory negligence, and stated the rule as follows: "The plaintiff, her father, and her mother, while they were yet inside the car, knew that the train was moving. As she was of tender years, and immediately under their care and control, their acts and conduct were her acts and conduct, and she is to be judged thereby." Also, in case of residence of infants. Brown v. Lynch, 2 Bradf. Sur. 214. When the plaintiff sought to serve the summons upon these infants, and the mother would not permit them to be seen, so that service could be made, her act must be imputed to them, and thus they were brought within the provisions of the statute avoiding or evading service, and the order for substituted service was good on that ground.

3. The third and fourth alleged defects appear to be entirely without merit. The order followed the statute almost literally. The statute did not require service upon the parent, guardian, or other person with whom the infants resided. But the affidavit upon which the order was made showed that the amended summons was, in fact, served on the mother of the infants on the 26th of February, 1877, and that such service was made on her "as being the mother of and the person with whom" the infant defendants, naming them, resided. It will be borne in mind that the mother was personally served as a defendant on the 10th of January preceding, and that after the substituted service upon the infants she petitioned for the appointment of a guardian ad litem of the infant defendants, and that upon her petition a guardian was appointed.

4. The statute did not require that the affidavit of service should be annexed to the papers served. It is therefore immaterial whether the affidavit of service made by Sherwood was attached to the amended summons or not. When proof was presented to the court from which it could find as a fact that the summons and complaint had actually been served as directed by the order, that was all that was required. Collins v. Ryan, 32 Barb. 647. The beginning of the affidavit, to the effect that the deponent served the annexed summons and complaint, can be disregarded, and then the question is presented, what did the affiant do? The answer is contained in the affidavit filed, namely, that he served the amended summons and complaint on the infant defendants by affixing six copies of said amended summons and complaint to the door, and by mailing through the post office, as required by the order and the statute permitting such service. This made the proof of service complete, and it must be held to have been the service

of the summons and complaint last amended, since the affiant stated that the infants were defendants, and they were not named as defendants in any other amended summons and complaint. Litchfield v. Burwell, 5 How. Prac. 342. But, if this affidavit be considered defective, and subject to the criticism made by the plaintiff of service on the infants, then the proof was supplied by the verified petitions asking for the appointment of a guardian ad litem, which recited that "this action has been commenced against said infant defendants by the plaintiff above named." The recent case of Murphy v. Shea, 143 N. Y. 78, 37 N. E. 675, is directly in point. In that case there was no affidavit of service on the infants, but the father, in an application for the appointment of a guardian ad litem, swore that the summons and complaint had been served upon them. The court said: "The affidavit of the person who actually served the summons is unnecessary so long as there is other competent proof of such service. * * * At any rate, there was enough stated to call upon the court for a decision upon the fact of service, and the court must have found such fact as the basis for its order for the appointment of a guardian." Then, too, the recital of service in the judgment is prima facie evidence of the fact of service, and of itself sufficient, when the judgment is attacked collaterally, to show that the court acquired jurisdiction. There is always a presumption in favor of the regularity of judicial proceedings, and this presumption is strengthened by lapse of time, and should not be lightly disregarded when attacked collaterally on a technical point of practice. Lowerre v. Owens, 14 App. Div. 216, 43 N. Y. Supp. 467. And the burden of proving want of jurisdiction is upon the party questioning it, and must be established in a clear and satisfactory manner to nullify a judgment. Potter v. Bank, 28 N. Y. 641; Ferguson v. Crawford, 86 N. Y. 609; Steinam v. Strauss (Sup.) 18 N. Y. Supp. 48, affirmed without opinion, 137 N. Y. 561, 33 N. E. 338; Berkowitz v. Brown, 3 Misc. Rep. 1, 23 N. Y. Supp. 792. "The presumption," says Judge Bischoff, in the case last cited, "is that the court would not have rendered the judgment or made the decree except upon due proof of service of summons in the action in the manner prescribed by law, and this presumption is, in the instance of the judgment under examination, materially strengthened by the fact that it recites that it was made upon reading and filing due proof of service of the summons and complaint. * * * The fact, therefore, that the proofs of service which are annexed to the judgment roll are deficient, in that they do not show sufficient service, does not impeach the jurisdiction of the court to render the judgment which was entered, and in terms preclude the infant defendants of their respective interests in the mortgaged premises. To destroy the presumption of jurisdiction, the want of sufficient service of the summons must either affirmatively appear from the record of the foreclosure action, or the fact of nonservice * * * should have been established in this action." In the case of Steinam v. Strauss, supra, there was no affidavit of service on any of the defendants, and the court held that the recital of service in the judgment was prima facie evidence of the fact of service. It follows that the defendant's title, derived through the foreclosure proceedings, is valid.

The other objections made were without merit. As to the unpaid taxes and assessments, no evidence whatever was offered on the subject, and plaintiff's attorney stated upon the trial that it was waived. It was also conceded that at the time fixed for completing the contract the defendant produced a satisfaction of the mortgage, and was then ready to deliver it to the plaintiff. That a mortgage under such circumstances is not a legal objection is too well settled to need discussion. That there was a tenant in possession is disproved by the evidence in the case. It has been suggested that the answer admits that one Anna Speir was in possession, but the same clause of the answer also alleges that the defendant was in possession, and was then able and offered to give the plaintiff possession. As a pleading, I think the answer sufficient without amendment to admit the evidence that was admitted upon the trial to the effect that there was no tenant in possession. At most, the allegations of the answer were indefinite in this respect, and, if the plaintiff had desired that it be made more definite, he should have made a motion for that purpose, and, not having done so, he cannot now be heard to complain. Besides, the plaintiff was not surprised on the trial by the admission of this evidence. His son, who had the principal charge of the transaction, testified that he had learned, after an investigation instituted for this purpose, that there was no tenant in possession. Not only this, but the plaintiff did not attempt to contradict the testimony of the witnesses Barney and Hay when they stated that at the time fixed for closing the contract there was no tenant in possession. It is true, there was a slight encroachment, but the objection to that was not seriously made or considered; and, if it had been, it was of such a trifling character that it could not be considered a defect in the title. The maxim, "De minimis non curat lex," applies. Katz v. Kaiser, 10 App. Div. 137, 41 N. Y. Supp. 776. The uncontradicted evidence shows that the encroachment did not in any way diminish the value of the lot. The defendant was willing to convey, and the contract would have been completed if the plaintiff had been willing to have accepted the title, which he was not, basing his objections upon the defects arising out of the foreclosure proceedings.

Having reached the conclusion that the title is good, and that the other objections are without merit, the remaining inquiry is presented, should specific performance now be decreed? I think not. The evidence shows that the property was contracted to be sold for several thousand dollars less than its real value, for the reason that the seller was receiving cash. The plaintiff then rejected the title, and he elected to stand upon his legal rights, and he cannot now be heard to say, "It is true, I refused to take the title because I thought it was bad, but, the court having reached the conclusion that it is good, I will now take it." To permit such practice would, in the present case, and in many cases, be unjust and inequitable, and lead to much litigation. This view is supported by Haffey v. Lynch, 68 Hun, 507, 23 N. Y. Supp. 59, where the court said:

"These views are entirely consistent with the present position of the plaintiff. At the time of the bringing of this action he was not willing to accept the title, but claimed that it was defective, and he speculated upon the defect.

Having lost in such speculation, he cannot now be allowed to claim the ad-vantages of the favorable change in conditions which have occurred since the commencement of the action. Actions for specific performance cannot be resorted to for the purpose of obtaining extensions of time for the completion of contracts, and the plaintiff should be remitted to his action for damages."

See, also, Dominick v. Michael, 4 Sandf. 374.

The defendant does not ask that a specific performance be decreed, and it will be observed that upon the trial the plaintiff made no offer to accept a deed, but then insisted upon his right to rescind the contract, and in support of that contention sought to establish the damages sustained by him for a breach of it. The contract of sale was. rescinded by the plaintiff, and the complaint should be dismissed, with costs, but without prejudice to the rights of the plaintiff in any other form of action.

Complaint dismissed, with costs, without prejudice to plaintiff's. rights in any other form of action.