doing. There is nothing to show that they have retained possession of the estate in an unreasonable manner. In fact, the great bulk of the residuary principal has been distributed.

None of the other points discussed require consideration. The decree appealed from should therefore be affirmed, with costs. All concur.

---

(25 App. Div. 197.)

## STEINHARDT v. BAKER.

(Supreme Court, Appellate Division, First Department. January 21, 1898.)

1. INFANTS—SERVICE OF PROCESS—SUBSTITUTED SERVICE.
   Under a statute authorizing substituted service in certain cases upon "any defendant," the fact that a defendant thus served is an infant is immaterial.

2. RIGHTS OF VENDEE—DEFECTIVE TITLE—RELIEF IN EQUITY.
   Where a vendee of real property absolutely rejects the title, on the ground of alleged defects, and elects for that reason to treat the contract as at an end, and, in a subsequent suit in equity against the vendor, still insists that the defendant has no title, while the defendant stands on the plaintiff's breach, and does not ask for specific performance as against the plaintiff, the latter is not entitled to any relief, either in damages, or for specific performance; and, whether the title is defective or not, the complaint in equity must be dismissed.

3. ADMISSIONS IN PLEADINGS.
   A party cannot derive an admission from his opponent's pleading by tearing a sentence from its context, but, if he takes any, must take all, including qualifications and explanations.

Appeal from special term, New York county.

Action by Morris Steinhardt against John O. Baker. From a judgment (46 N. Y. Supp. 707) dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and O'BRIEN, JJ.

Eugene Frayer, for appellant.
Chas. E. Miller, for respondent.

BARRETT, J. But for some expressions in the opinion of the learned trial justice, which, were they unqualifiedly adopted, might lead to further useless litigation between the parties here, we could properly dispose of this appeal by an affirmance upon that opinion. We entirely agree with the learned justice in his general treatment of the case. The plaintiff rejected the title upon various grounds, all of which were untenable. His main objection was that there were certain irregularities in the conduct of a foreclosure suit through which the defendant derived title, and he contended that these irregularities vitiated the judgment which followed. It is insisted on his part that the court, in that foreclosure suit, acquired no jurisdiction over certain infant heirs of one William Fitzpatrick, who was the owner of the property in question, and who died intestate. The particular objection is that these infants could not be brought in and served with process by the proceeding known as "substituted service." This subject is

fully and ably considered by the learned trial judge, and we can add but little to his reasoning. A special point was made, both below and here, that the act which, at the time when this foreclosure suit was pending, authorized substituted service in certain cases, did not in terms specify infant defendants, and that, consequently, infants were not embraced within the general reference in the act to "any defendant." The learned trial judge overruled this point; holding that the use of the words "any defendant," indicated, as clearly as language could, an intent to include infants. In this conclusion, we think, he was fortified, not only by the cases which he cites, but by the more direct authority of Wheeler v. Scully, 50 N. Y. 667. There the question arose as to publication against unknown owners. It was claimed that the judgment did not bar infants, for the reason that the service of the summons was not sufficient as against them. The court of appeals, however, overruled the objection; saying that, if the unknown heirs were infants, they were bound by the service, as subdivision 6 of section 135 of the then Code of Procedure made no exception in case the unknown defendants were infants. This authority seems to settle the principle that infants are deemed to be included in the general provisions of such a statute, unless expressly excepted. All the other objections made to this foreclosure judgment are equally untenable. They are founded either upon alleged irregularities of a trivial character, or else looseness in mere matters of detail. They do not go to the jurisdiction, nor do they affect the validity and binding force of the judgment.

The other objections which the plaintiff made to the title are fully considered by the learned trial justice, and we need add nothing to his conclusions with regard to those objections. He also found, upon sufficient evidence, that the plaintiff, prior to the time fixed for the completion of the contract, had waived all objections to the validity of the title, except the objections to the foreclosure decree. In this view of the case, it is evident that the plaintiff has no cause of action against the defendant either at law or in equity. If the title was good, the breach was his, not the defendant's. The court having decided, upon the issue tendered by the plaintiff, that the title was good, the complaint was properly dismissed. In view of this decision, however, it was inconsistent to dismiss the complaint "without prejudice to the rights of the plaintiff in any other form of action." The tendency of that expression in the opinion and decree was to encourage the plaintiff to bring a fruitless action at law. Upon the other hand, whether the title was good or bad, the plaintiff, because of the position which he assumed, was not entitled to equitable relief. The facts as to his attitude are quite clear. After several adjournments, and some negotiations, he finally rejected the title, and declined to accept the defendant's deed. He notified the defendant, both verbally and in writing, that, in his judgment, and that of his advisers, the title was bad, and that he would not accept it. In effect, he elected to treat the contract as at an end, because of the defendant's inability to give him a good and marketable title. His main objection went, as we have seen, to the foundation of the defendant's title, and was incurable. Having taken this position, and, in substance, reasserted it in his present com-

plaint, he must fail in his demand for equitable relief. It will be observed that this is not a case where the vendee holds to his contract, and asks for alternative relief, namely, specific performance, or damages if that cannot be obtained. Under such circumstances, it has been held that, even after it is shown that specific performance cannot be had, the action may be retained to award damages. Barlow v. Scott, 24 N. Y. 40; Sternberger v. McGovern, 56 N. Y. 12. Nor is it a case where the title, defective when the action was commenced, can be made good by the defendant at the time of the trial. Still less is it within the principle that where the original objection to the title is not wanton or frivolous and both parties, in their pleadings, ask for specific performance against the other, the court may—especially where there has been no material change of circumstances—decree specific performance. Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966; Kahn v. Chapin, 152 N. Y. 305, 46 N. E. 489. Here the plaintiff has plainly elected to consider the contract at an end, while the defendant rests upon the plaintiff's breach. In fact, the plaintiff has alleged throughout that the defendant has no title, that the fee of the premises is actually vested in other people, and that, consequently, the contract is impossible of execution. The defendant joins issue upon these allegations, makes no affirmative claim to specific performance, and simply demands that the complaint be dismissed. If the plaintiff is right in his view, the contract was as impossible of execution at the time of the trial as it was when the action was commenced. It comes to this: that the plaintiff asserted, and still asserts, that the defendant's title is hopelessly bad; and for that reason he declined, and still declines, to accept it. In that attitude, he comes into equity, and asks the court to decide whether he is right or wrong in that view, and thereupon to give him whatever judgment is appropriate to the correct view. In other words, if he is right, he wants damages; if he is wrong, he wants specific performance. It is apparent that the court cannot help him in this wise.

The only exception taken upon the trial which calls for special consideration was the refusal of the learned judge to strike out the testimony of Mr. Barnay (in whose interest the title seems to have been held by the defendant), to the effect that there was no tenant in possession of the property, and consequently no incumbrance growing out of any such tenancy. The special point of the objection to this testimony is that it contradicts an express admission of the answer. The point is not well taken. There is no unqualified admission in the answer of any such tenancy. The admission that Anna Spear was lawfully in possession of the premises is coupled with the statement that she was in possession simply as a tenant at will of defendant, and that she offered to immediately quit and surrender the premises, as the plaintiff well knew. It is also coupled with the statement that the defendant was in possession on the day fixed for the completion of the sale, and was able, and offered, to give the plaintiff possession free from all incumbrances. The admissions of the answer must be taken in their entirety. If so taken, there was no incumbrance; and the defendant was able, and offered, to give full and exclusive possession on the day

when the title was to be closed. The testimony was, in that view, harmless. If, however, the entire admission be not taken, the testimony was clearly proper.

For these reasons, as well as those assigned by the learned trial justice, the complaint, as in equity for specific performance, was properly dismissed; and the judgment should therefore be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.

---

(21 Misc. Rep. 729.)

HUTCHINSON et al. v. SKINNER et al.

(Supreme Court, Special Term, Albany County. November, 1897.)

1 PUBLIC SCHOOLS—LOCAL BOARD OF EDUCATION—APPEALS—STATE SUPERINTENDENT—POWER TO OPEN SCHOOLS.
      Watervliet City Charter (Laws 1896, c. 905, tit. 5, § 12, subd. 10) provides that the local board of education shall have, "to the exclusion of all boards and officers, except the superintendent of public instruction, * * * the entire supervision and management of the schools of said city." The consolidated school law (Laws 1894, c. 556, tit. 14, §§ 1, 2) provides that any person aggrieved by any decision made by certain school authorities named therein, or "by any official act or decision concerning any other matter under this act, or any other act pertaining to common schools, may appeal to the superintendent of public instruction, who is hereby authorized and required to examine and decide the same, and his decision shall be final and conclusive," and that such superintendent, "in reference to such appeals, shall have power to regulate the practice therein, * * * and to make all orders, by directing the levying of taxes, or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision." The local board having been unable, after repeated meetings, to employ teachers and other employés, in order to open the city schools, for the reason that every resolution offered was defeated by a tie vote, two of the members appealed to the state superintendent, who ordered the board to provide the necessary equipment, and open the schools on a certain day. Such order not being complied with, the state superintendent made an order temporarily appointing teachers and other employés until the local school authorities should designate others as their successors, and caused the schools to be opened. *Held*, that every refusal of such board to pass any of the resolutions offered was a decision or an official act under which an appeal could properly be taken to the state superintendent, who had the jurisdiction, under the law, to examine and decide the same, and also the power to make all orders necessary in his judgment to give effect to his decision.

2. SAME—INJUNCTION.
      Even if such order was beyond the jurisdiction of the state superintendent, nevertheless a temporary injunction should not issue to restrain him and the local board from enforcing such order, where the result thereof would be to close the schools at a time when they should be open.

3. SAME—SUIT BY TAXPAYER.
      Under the public officers law (Laws 1892, c. 681, art. 1, § 2) the superintendent of public instruction is not a municipal officer, but a state officer, and, as such, was not answerable or subject to an injunction at the suit of a taxpayer, brought under Laws 1892, c. 301, and Code Civ. Proc. § 1925, known as the "Taxpayers' Acts."

Motion by Charles H. Hutchinson and others for an injunction pendente lite to restrain Charles R. Skinner, state superintendent of public instruction, and others, from enforcing his order directing the opening of the public schools in the city of Watervliet. Denied.