(26 Misc. Rep. 445.)

### STUYVESANT v. WEIL.

(Supreme Court, Special Term, New York County.   February, 1899.)

1. SPECIFIC PERFORMANCE—RIGHT TO DISMISSAL—WAIVER.
    A right to a dismissal of a complaint for specific performance of a contract to sell land, on the ground that plaintiff has an adequate remedy at law, is waived by failing to raise the objection in the answer.

2. SAME—REMEDY AT LAW.
    Where the title of one contracting to sell land is hopelessly bad, the remedy of the purchaser is an action at law for damages, and not an action for specific performance praying for a return of money advanced if defendant cannot convey a good title.

3. SUMMONS—AMENDMENT.
    An amendment of a summons, under Code Civ. Proc. § 723, changing defendant's Christian name, cannot cure a defect in the service of summons with the wrong Christian name therein.

4. JUDGMENT—RECITALS—PRESUMPTIONS.
    The rule that recitals in a judgment are prima facie evidence of the facts recited does not apply where the record discloses the falsity of the recitals.

5. COURTS—JURISDICTION—DEFECTS IN SERVICE OF SUMMONS.
    A court acquires no jurisdiction of a defendant whose Christian name is incorrectly given in the summons, and who makes no appearance, where defendant was not designated as prescribed by Code Civ. Proc. § 451, providing for the method of procedure where plaintiff is ignorant of defendant's name.

6. SAME—APPEARANCE—WAIVER.
    A defendant defectively served in an action to foreclose a mortgage waives his right to question the validity of the judgment, by appearing after sale thereunder in surplus proceedings, and consenting to the application of the surplus.

7. MORTGAGES—FORECLOSURE—FAILURE TO FILE LIS PENDENS.
    The title of a purchaser at a foreclosure sale is not affected by a failure to file a lis pendens against the owner of the equity of redemption, where no conveyance from such owner was recorded before the recording of the deed to the purchaser.

8. SAME—JUDGMENT—COLLATERAL ATTACK.
    A decree foreclosing a mortgage for an installment of interest cannot be collaterally assailed, though it orders a sale subject to the principal, in contravention of Code Civ. Proc. §§ 1636, 1637, requiring a sale of a sufficient quantity of the land to satisfy the amount due, if it can be done without injury to the parties' interests, and, if not, directing a sale of the land, and payment of the principal from the proceeds.

Action by Augustus Van Horne Stuyvesant against Ralph Weil to compel specific performance of contract for the sale of land or for repayment of advances made and expenses.   Dismissed.

Lord, Day & Lord (Lucius H. Beers, of counsel), for plaintiff.

Isaac Fromme (Lewis Johnston and Edward W. S. Johnston, of counsel), for defendant.

WERNER, J.   This case was presented upon a stipulation and proofs which established the following facts:   On the 2d day of May, 1895, one Edward L. Lawrence was seised in fee of the premises described in the complaint.   On that day, he executed and delivered to Simon Pretzfield, Emma Pretzfield, and Isaac N. Heidelberg, as executors of, and trustees under, the last will and testament of William Pretzfield, deceased, a mortgage upon said premises, to secure payment of the sum of $43,000 on the 2d day of May, 1900, with interest at the rate of 5 per cent., payable half-yearly, on May 2d and November 2d.   On the same day, Lawrence conveyed said premises to Mary J. Stockton, for the expressed consideration of $65,000, subject to said mortgage of $43,000.   On the 21st day of November, 1895, said Mary J. Stockton executed to one Theodore J. Miller a mortgage upon said premises to secure payment of the sum of $3,-000 on the 21st day of November, 1896, with interest at the rate of 6 per cent. per annum.   On the 21st day of November, 1896, said last-mentioned mortgage was duly assigned by said Miller to one Joseph Blumenthal.   On the 28th day of May, 1896, the said executors and trustees under the last will and testament of William Pretzfield, deceased, commenced an action in the supreme court to foreclose said $43,000 mortgage for nonpayment of interest.   On the 5th day of June, 1896, said Mary J. Stockton was personally served with the summons and complaint in said action.   She did not appear in the action, nor answer the complaint, but did appear in surplus proceedings instituted after the sale of said premises under the judgment in said action.   On the 27th day of June, 1896, the usual affidavit of nonappearance and failure to answer on the part of defendants was filed by plaintiff's attorneys in said action.   This affidavit contained a statement that, by inadvertence, the defendant Stockton had been described and designated in the summons, complaint, and lis pendens "as 'Emma J. Stockton,' whereas her name is, in fact, 'Mary J. Stockton.' "   Upon this affidavit, an ex parte order was made referring it to a referee to compute the amount due to the plaintiff upon said mortgage, and directing "that the summons and complaint, and all other papers herein, be amended by striking out the name 'Emma J. Stockton' as one of the defendants in this action, and inserting in lieu thereof the name 'Mary J. Stockton.' "   No amended lis pendens was filed in said action, nor was any amended or supplemental summons issued.   Upon the report of Arthur Berry, the referee appointed in said action, judgment of foreclosure and sale of said premises was obtained, and entered ex parte on the 29th day of June, 1896. Said premises were sold under said judgment on July 30, 1896, to one William H. Siegman, for $2,250, subject to the plaintiff's mortgage for $43,000, and interest thereon from May 2, 1896.   On August 6, 1896, the said referee reported that there was a surplus of $928.75, which he had deposited with the chamberlain of the city of New

York, and that he had conveyed said premises to said Siegman by deed dated July 30, 1896. On August 11th, surplus proceedings were instituted under the judgment in said foreclosure action, and said Mary J. Stockton was duly served with an order, issued out of this court, requiring her to show cause at special term, in part I of said court, on the 14th day of August, 1896, why a referee should not be appointed to ascertain and report the amount due the claimant, Blumenthal, in said proceedings, or any other person who had a lien on said surplus moneys. On the return day of said order, said Mary J. Stockton duly appeared, by William H. Harris, as her attorney. The proceeding was referred to George E. Mott, Esq., and, on hearing before him, said Mary J. Stockton also duly appeared by attorney, and consented to the entry of the order awarding said surplus to the claimant, Blumenthal. Before the recording of said referee's deed to Siegman, "no conveyance from, or undischarged or unsatisfied lien, claim, or incumbrance against, the said Mary J. Stockton, or against the said premises, appears of record, or was filed or recorded," except those referred to. On the 6th day of January, 1897, said Siegman conveyed said premises to Ralph Weil, the defendant herein, subject to the said mortgage of $43,000, which still remains a lien upon said premises. On the 29th day of January, 1898, the plaintiff and the defendant entered into the contract described in the complaint. It is conceded that the plaintiff paid to the defendant the sum of $2,-500 at the time of signing the contract, and that the sum of $330.80, paid by the plaintiff for the examination of the title to said premises, is a proper and reasonable charge for that service. No question is raised as to the sufficiency of the tender on either side. On the opening of plaintiff's counsel at the trial, defendant's counsel moved for a dismissal of the complaint, "on the ground that the plaintiff has an adequate remedy at law, that defense being taken specifically in the answer." An examination of the answer discloses that no such objection appears therein, and the defendant must therefore be deemed to have waived his right to avail himself of this defense (Lough v. Outerbridge, 143 N. Y. 277, 38 N. E. 292; Land Co. v. Roe, 8 App. Div. 366, 40 N. Y. Supp. 799); although it would be otherwise, had this objection been taken by answer.

The complaint alleges that the defendant's title is hopelessly bad. If this be true, the defendant can no more give the plaintiff a good title now than he could at the time the contract was made. In that event, plaintiff's remedy would be a simple action at law for damages. If the defendant's title is not defective, then there is no occasion for bringing this suit, because it is conceded that the defendant's tender of a deed was sufficient. Although the plaintiff attempted, in his complaint, to bring himself within the rule applied to a vendee who holds to his contract, and simply asks for alternative relief, it seems clear that the case is brought within the rule laid down in Steinhardt v. Baker, 25 App. Div. 205, 49 N. Y. Supp. 357. If the defendant's title is bad, as the plaintiff says it is, then he does not want it; if it is good, then he has no standing in court. But, in view of defendant's failure to raise the question by his answer, we will proceed to consider the case upon its merits.

The first objection raised by the plaintiff to the defendant's title is that the court never acquired jurisdiction of the person of Mary J. Stockton, who was the owner of the equity of redemption, and that the judgment of foreclosure and sale in Pretzfield against Lawrence was therefore void. In support of the contention, plaintiff's counsel cites Farnham v. Hildreth, 32 Barb. 277, Schoellkopf v. Ohmeis, 11 Misc. Rep. 253, 32 N. Y. Supp. 736, and McGill v. Weil (Co. Ct.) 10 N. Y. Supp. 246. In the first of these cases, which was in the supreme court, the defendant, whose name was "Truman Hildreth," was sued by the name of "Freeman Hildreth." The defendant did not appear in the action, and judgment was taken against him by default. Execution was issued, and certain lands belonging to the defendant were sold thereunder. The sheriff's certificate and deed recited a judgment against Truman Hildreth. After giving of the deed, and the granting of an order for a new trial, the plaintiff in the judgment obtained an ex parte order, amending, "nunc pro tunc," the judgment roll, the docket of the judgment, and the execution issued thereon, by inserting the word "Truman" wherever the word "Freeman" occurred. It was held that this amendment did not have the effect to render the sale valid or to devest the defendant of the title of the property levied on. In Schoellkopf v. Ohmeis, 11 Misc. Rep. 253, 32 N. Y. Supp. 736, in New York common pleas, "Joseph M. Ohmeis" was sued as "Jacob Ohmeis." Upon the defendant's failure to appear or answer, an assessment of damages was had. A motion, after judgment, to amend the process and proceedings "nunc pro tunc," by substituting the name "Joseph M. Ohmeis" for "Jacob Ohmeis," was denied, on the ground that the court has never gained jurisdiction of the person of the defendant. In speaking of the comprehensive power of amendment given to the courts by section 723, Code Civ. Proc., the court, per Pryor, J., says: "It cannot embrace a case of which the court has not jurisdiction, nor make valid what is void." McGill v. Weil, supra, was a case in justice's court, in which "Gustavus Weil" was sued by the name of "Augustus Weil." The defendant did not appear, and judgment went against him by default. An order in supplementary proceedings was thereupon issued, directing said defendant to appear before a referee for examination. Upon the defendant's refusal to be sworn and be examined in said proceedings, a motion was made to punish him for contempt of court. This motion was denied, upon the ground that the justice had never acquired jurisdiction of the defendant. To the same effect are Moulton v. De Ma Carty, 6 Rob. (N. Y.) 477; Abeel v. Conhyser, 42 How. Prac. 253; Gardner v. Kraft, 52 How. Prac. 499; Miller v. Foley, 28 Barb. 631; Muldoon v. Pierz, 1 Abb. N. C. 309; Wiehle v. Schwarz, 54 N. Y. Super. Ct. 171. The defendant relies upon the recitals of the judgment to sustain its validity, and cites many cases in support of this contention. No case has been brought to our attention, however, in which the prima facie evidence of the recitals of jurisdictional facts has been presented to override positive testimony showing want of jurisdiction. It is the well-settled rule of this state that the recitals in judgments of courts of general jurisdiction are prima facie evidence of the facts recited. When such judgments are attacked col-

laterally, such recitals are, in and of themselves, sufficient to show that the court acquired jurisdiction. The following cases furnish familiar illustrations of this rule: Smith v. Trust Co., 154 N. Y. 340, 48 N. E. 553; Steinhardt v. Baker, 20 Misc. Rep. 474, 46 N. Y. Supp. 707; Murphy v. Shea, 143 N. Y. 78, 37 N. E. 675; Lowerre v. Owens, 14 App. Div. 216, 43 N. Y. Supp. 467; Potter v. Bank, 28 N. Y. 641; Ferguson v. Crawford, 86 N. Y. 609; Steinman v. Strauss (Sup.) 18 N. Y. Supp. 48; Berkowitz v. Brown, 3 Misc. Rep. 1, 23 N. Y. Supp. 792; O'Connor v. Felix, 87 Hun, 179, 33 N. Y. Supp. 1074.

But it seems to us that this rule has no application in a case where the record clearly disclosed that the recitals upon which the judgment is based are not true, and it affirmatively appears that the court never acquired jurisdiction of the person of the defendant. It is a fundamental and necessary rule, of universal application, that no court can render judgment in any case where it has not acquired jurisdiction of both the subject-matter of the action and the person of the defendant. The power of amendment given to the courts by section 723, Code Civ. Proc., can only be exercised when such jurisdiction exists. The stipulation of the parties herein affirmatively establishes the fact that the only summons ever served upon Mary J. Stockton contained the name of "Emma J. Stockton" as a defendant. No summons was ever issued containing the name of "Mary J. Stockton." The latter did not appear in the action, either in person or by attorney. It will not be contended that if, under these circumstances, no amendment of the summons had ever been made, the judgment would have been valid and effectual, as against this particular defendant. How does the ex parte order of the court cure the defect? Can jurisdiction of the person of a defendant be acquired by this means? We think these questions must be answered in the negative. Section 451, Id., provides for the method of procedure when the plaintiff is ignorant of the name, or part of the name, of a defendant. When such a defendant is not designated as prescribed by said section, the plaintiff takes the risk of properly naming the defendant. If a defendant appears, and submits himself to the jurisdiction of the court, any mistake in his name can be corrected, as a matter of course. Where, in case of a mistake of a name of a defendant, he does not appear, he should be brought in by supplemental summons, as provided in section 453, Id.

But, although Mary J. Stockton did not appear in the action of Pretzfield against Lawrence, before judgment therein, she did appear in the proceedings instituted for the disposition of the surplus which arose upon the sale under the judgment in said action. It remains to be determined, therefore, whether her conduct in said proceeding in any wise affects the validity of the judgment in said action, as to her. Surplus proceedings are proceedings in the action. Wilkinson v. Paddock, 57 Hun, 195, 11 N. Y. Supp. 442; Insurance Co. v. Bowen, 47 Barb. 623. Mary J. Stockton was duly cited to appear in said proceedings, and did appear by attorney, and consented to the entry of an order awarding the surplus to the defendant Joseph Blumenthal, to apply upon the mortgage which he held against her. This was, in

effect, an acknowledgment on the part of Mary J. Stockton that said surplus represented her interest in the property sold under said judgment of foreclosure and sale. This acknowledgment could only be predicated upon her acquiescence in the regularity and sufficiency of the judgment under which the surplus arose. The payment of the surplus to Blumenthal was, moreover, pro tanto, a payment of Mary J. Stockton's debt. By her failure to take advantage of any irregularity or jurisdictional defect in the foreclosure action, upon the surplus proceedings, and by consenting to the above-mentioned application of the surplus fund, she has estopped herself from questioning the validity of the judgment in said action. McBride v. Lewisohn, 17 Hun, 527; Groves v. Rice (Sup.) 29 N. Y. Supp. 1050; Harrison v. Trust Co., 80 Hun, 463, 30 N. Y. Supp. 443. If we are correct in the assumption that said Mary J. Stockton, the owner of the equity of redemption, is estopped from denying the validity of the foreclosure judgment, it follows, as a logical sequence, that all others in privity with her are also estopped. If this is so, as between the parties in a direct motion in the action, it is equally true in a collateral action. The recent case of O'Connor v. Felix, 87 Hun, 180, 33 N. Y. Supp. 1074, is an interesting contribution to the law of collateral attack upon judgments of courts of general jurisdiction. As we read the opinion in that case, it goes to the extent of holding that, in every collateral attack upon such a judgment, there is a conclusive presumption of law that the court acquired jurisdiction by the service of the process or the appearance of the party, no matter what the record may show to the contrary. The conclusion reached in that case seems to have been based, in part at least, upon the reasoning laid down in Vanfleet, Col. Attack, p. 472, which is stated as follows:

"A judgment rendered after the utmost care, at the end of an impartial trial, may not be right, and it may unjustly sweep away the life, liberty, or property of the defendant; yet it is lawful, and a just and rightful foundation for the titles of others; and, although wrong in itself, it is lawful and right collaterally."

If this is the law of this state upon this question, that case is of itself a sufficient answer to the plaintiff's contention here. We do not, however, place our decision on this ground.

The second objection which the plaintiff raises to defendant's title is that no notice of pendency was ever filed against Mary J. Stockton. The stipulation on this point is not so explicit as it is upon the question of service of process, but the only fair inference to be drawn from the stipulation is that the notice of pendency was filed against "Emma J. Stockton." The thirteenth stipulation is:

"That, before the recording of the deed of Arthur Berry, referee, to William H. Siegman, on August 30, 1896, as specified in paragraph 10 of this stipulation, no conveyance from, or undischarged or unsatisfied lien, claim, or incumbrance against, the said Mary J. Stockton, or against the said premises, appears of record, or was recorded, except as heretofore appears in this stipulation."

A lis pendens only relates to and affects voluntary alienations of property, pending a suit in respect to it, by or from the defendants therein, and in no way affects independent parties asserting adverse

rights in respect to it. Becker v. Howard, 4 Hun, 359. It only operates as a notice, requiring all persons to be aware of acquiring rights in the subject-matter of the litigation from any of the parties named therein, during the pendency of the suit. Jaycox v. Smith, 17 App. Div. 146, 45 N. Y. Supp. 299. In Sheffield v. Robinson, 73 Hun, 173, 25 N. Y. Supp. 1098, the court said:

"The object of the lis pendens is to give notice of the pendency of the action to all persons who may subsequently acquire, or seek to acquire, rights in the property; but it is not required for the protection of the parties to the action, and an omission of the same * * * is not a defense to the action."

In view of the stipulation that no rights intervened to affect the title, we do not see how the failure to file a lis pendens against Mary J. Stockton can affect the validity of the defendant's title. But, if there were any doubt upon this question, it would be removed by the application of the principle of estoppel arising from said Mary J. Stockton's appearance and participation in the surplus proceedings. If she and her privies are estopped from denying the validity of the foreclosure judgment, they are equally estopped from questioning the proceedings which led up to that judgment.

The third objection to defendant's title is that the judgment entered in Pretzfield against Lawrence was not in accordance with the provisions of the Code of Civil Procedure regulating the practice in foreclosure cases when the whole amount is not due. The prayer for relief in the complaint in that action, among other things, asks "that the said premises may be decreed to be sold according to law, subject, however, to said mortgage of $43,000." This was the mortgage being foreclosed for an installment of interest, amounting to $1,075. The judgment followed the prayer for relief in this language:

"And it is further ordered that the said referee sell said premises, subject to the plaintiffs' mortgage of $43,000, with interest from May 2d, 1896, at the rate of —— per cent. per annum."

This was extraordinary practice. It directly contravened the provisions of sections 1636 and 1637 of the Code of Civil Procedure, the former of which provides, in substance, that when the whole of the mortgage debt is not due, and the property is so circumstanced that it can be sold without injury to the interests of the parties, no more of the property shall be sold in the first instance than will be sufficient to satisfy the amount due, with the costs and expenses of the sale. The latter of said sections provides that, when the mortgaged property is so circumstanced that a sale of the whole will be most beneficial to the parties, the final judgment must direct that the whole property be sold, "that the proceeds of the sale, after deducting the costs of the action and the expenses of the sale, be either applied to the satisfaction of the whole sum secured by the mortgage, with such a rebate of interest as justice requires, or be first applied to the payment of the sum due, and the balance, or so much thereof as is necessary, be invested at interest, for the benefit of the plaintiff, to be paid to him from time to time, as any part of the principal or interest becomes due." Although the language of these sections appears to be mandatory, they simply provide for a rule of procedure which does not affect the jurisdiction of the court, nor leave its judgment open

to collateral attacks. The object of these sections is, evidently, to prevent the possibility of frequent and vexatious suits upon the same mortgage, with their attendant costs and expenses. In the absence of these Code provisions, there would be nothing to prevent the rendition of just such a judgment as we find in this foreclosure case. The failure to follow the directions of the statute is undoubtedly an irregularity upon which the defendant affected thereby could have moved in the action, within the year, to vacate the judgment. In re Stilwell's Estate, 139 N. Y. 337, 34 N. E. 777; Bank v. Blye, 119 N. Y. 414, 23 N. E. 805; Brenen v. North, 7 App. Div. 81, 39 N. Y. Supp. 975; Harrison v. Trust Co., 144 N. Y. 327, 39 N. E. 353. But, as we have observed, the only party who could make this motion is prevented, both by lapse of time and by his conduct, from raising this question. The imaginary future difficulties referred to in the learned discussion of this question by plaintiff's counsel seem to have been happily averted by the agreement of plaintiff to take said premises subject to said mortgage of $43,000. The completion of the contract in accordance with this provision thereof will set at rest any doubt as to the legal status of this mortgage. We are, therefore, of the opinion that there are no objections to defendant's title which affect its marketability, and that plaintiff's complaint should be dismissed upon the merits, with costs. Let findings and decree be submitted in accordance herewith.

Complaint dismissed, with costs.