GEORGE GARIBALDI, as Assignee of WAYSIDE REALTY CORPORATION, Plaintiff, *v.* CITY OF YONKERS, Defendant.

Supreme Court, Special Term, Westchester County, March 10, 1949, on reargument, April 13, 1949.

*Jerome Beaudrias* for plaintiff.

*John H. Galloway, Jr., Corporation Counsel (Charles L. Curran* of counsel), for defendant.

FLANNERY, J. Of plaintiff's five points, two have no relevance here because any alleged default or delay of the defendant in the preparation or execution of the executory contract of sale was waived by plaintiff's and his assignor's action thereon and if any of the alleged public acts or remarks of the officials, employees or agents of defendant did harm to plaintiff they were acts and remarks within their and defendant's legal right, done and made without malice, and no cause of action in tort accrued to plaintiff from said acts, remarks and harm, if any. On those two plaintiff can have no relief. Nor can plaintiff succeed on the three exceptions to title that he made. The title company's exception No. 5 had been obviated over four months before the adjourned closing date, July 11, 1947, by the satisfaction of record, on March 3, 1947, of the two judgments and plaintiff should have informed himself of the state of the record before he appeared for the closing. · The title company's exception No. 8 was not well taken because only a permanent receiver in dissolution has title (General Corporation Law, § 168) but a temporary receiver is merely a custodian and agent of the court to take and hold possession without title (General Corporation Law, § 162; *Matter of French,* 181 App. Div. 719, 731, affd. 224 N. Y. 555; *Markham* v. *Taylor,* 70 F. Supp. 202, appeal dismissed 163 F. 2d 940). Here, the temporary

receiver had not even filed a certified copy of the order appointing him in the county where was situated the realty mortgaged to the McGolrick Bond & Mortgage Corp. He had no title, even if he had possession of the bond and mortgage. He was not a necessary party defendant in the tax lien foreclosure (*Herring* v. *New York, Lake Erie & Western R. R. Co.,* 105 N. Y. 340, 371–373; *Bate* v. *Brenack Stevedoring Co.,* 197 App. Div. 194; *Decker* v. *Gardner,* 124 N. Y. 334; *Pringle* v. *Woolworth,* 90 N. Y. 502, 510; *Kincaid* v. *Dwinelle,* 59 N. Y. 548). The title company's exception No. 9 was not well taken because there was no defect in service apparent on the record and neither the title company nor the plaintiff produced anything to contradict or even cast doubt on the record (*Greenblatt* v. *Hermann,* 144 N. Y. 13, 18; *Title Guar. & Trust Co.* v. *Fallon,* 101 App. Div. 187; *Bardes* v. *Herman,* 144 App. Div. 772, affd. 207 N. Y. 745; *Reynolds* v. *White,* 134 App. Div. 248). Mere suspicion is not enough (*Carroll* v. *McKaharay,* 35 App. Div. 582; *Todd* v. *Union Dime Sav. Inst.,* 128 N. Y. 636; *Hagan* v. *Drucker,* 90 App. Div. 28). It is apparent then that plaintiff has defaulted without excuse and defendant is entitled to retain the part payment made on account of the purchase price at the acceptance of the bid as recited in the contract. Accordingly, the motion of plaintiff will be denied and the cross motion of defendant granted and the complaint dismissed, with costs and $10 costs of the cross motion. Submit order.

(On reargument, April 13, 1949.)

Subparagraph (a) of subdivision 1 of point I of plaintiff's brief is no more than a statement that the voluntary petition of the directors '' for an order dissolving the corporation and appointing a receiver to take possession of all corporate books, records and assets, operated to terminate all prior delegations of ' general powers involving the exercise of judgment and discretion ' in the conduct of corporate affairs, — the minimum requirement for a ' Managing Agent.' '' There is nothing in the provisions of section 101 of the General Corporation Law that suggests the petition has this effect and the court has been unable to find any case in which this was held. Presumably, the plaintiff has also been unable to find a case of that kind, for he cites none. If his argument were sound it would be difficult to understand the meaning of section 111 of the General Corporation Law which allows a temporary receiver to obtain an injunction against actions by creditors of the corporation. If

all officers and managing agents were stripped of power by the mere filing of a petition or the appointment of a temporary receiver section 111 would be wholly unnecessary for a receiver can only be sued with permission of the court anyway and the only purpose of section 111 was to permit the restraint of actions brought directly against the corporation by service upon its officers and managing agents. Also, if the plaintiff's theory were correct there would be an interregnum of many weeks between the presentation of the petition and the final order of dissolution when no person would be authorized to receive service of process for the corporation or do any other act for it. It is true that in some proceedings a court might appoint a temporary receiver and specially endow him with the powers of a permanent receiver (General Corporation Law, § 162), but even the court could not appoint a temporary receiver where the corporation was solvent (General Corporation Law, § 110; *Matter of Greenwald,* 248 App. Div. 590). Of course, upon the entry of the order of dissolution section 29 of the General Corporation Law would become effective and, if the corporation were insolvent, the order making the final dissolution would probably appoint a permanent receiver who could act for the corporation, but in the meanwhile, on plaintiff's theory, the corporate affairs would drift without management or control. Plaintiff is wholly mistaken about the effect of the presentation of a petition for voluntary dissolution.

Subparagraph (b) of the first subdivision of point I rests merely on the apparent denial by the former temporary receiver of any knowledge of a '' Managing Agent.'' The attorney for the plaintiff called the former temporary receiver on the telephone and in his affidavit verified March 26, 1949, states that he '' was advised by him that, as temporary receiver of McGolrick Bond & Mortgage Corp., *he not only did not continue the authority of any person previously acting as Managing Agent for said corporation, but that he knew of no such person having such authority, and had never even heard of a ' Miss Glass ' being connected with said corporation, either as a Managing Agent or even as an employee in any capacity whatsoever.''* In a supporting affidavit made by the former temporary receiver and verified April 1, 1949, he says '' that the statements contained in the last six (6) lines of page 2 and the first three (3) lines of page 3 of said affidavit, relating to the conversation had by deponent with said Jerome Beaudrias, Esq., are in all respects true.'' It is not entirely clear whether the former temporary

receiver means merely that Mr. Beaudrias correctly reported what he had said, or that it was not only correctly reported but that what he was reported to have said was true. However, even if it be assumed that the effect of the two affidavits is the same as if the former temporary receiver had repeated in the first person what Mr. Beaudrias says he said, the furthest reach of all the language is that the former temporary receiver really knows nothing about the subject of discussion. It is not clear how active he was but he was inactive enough to omit for months to file in Westchester County a copy of the order appointing him although he knew or should have known that among the assets, of which he was required by the order to take possession, was a past-due mortgage of Malba Park, Inc., on real property in Westchester County for the face amount of $22,500. Now, over twelve years after the receivership and after he, as receiver, and McGolrick Bond & Mortgage Corp., itself, have omitted for many years to make any claim of a lien in or on the real property it is not strange that he cannot remember. If there is anything strange it is that he remembers anything at all. It is probably true that he did not continue the authority of any person previously acting as managing agent because he had no power either to continue or discontinue the authority of any officer or agent. He was not a receiver of the corporation but a temporary receiver of its assets, a custodian, merely. What is also strange is that he does not say that his records, or the records of the proceedings or of his receivership, or the corporate records show there was no person of the name of '' Miss Glass '' connected with the corporation. His statement does not impugn the affidavits of service and if it did it could have no effect now. His receivership ended many years ago and the defendant has held title under the referee's deed for almost six years. Apparently neither he nor McGolrick Bond & Mortgage Corp., at any time during those years, made any effort to assert any claim against the realty although they were chargeable with actual knowledge of the bond and mortgage held by the corporation, and, if not with actual, at least, with constructive knowledge of the deed given to the defendant May 19, 1943, and recorded April 13, 1944 (*Matter of Field*, 235 App. Div. 689). There is nothing in this to lead the court to change its opinion.

Subparagraph (c) of subdivision 1 of point I is no more than a reference to Miss Glass' service as '' Managing Agent '' for both McGolrick Bond & Mortgage Corp., the mortgagee, and Malba Park, Inc., the fee holder. Plaintiff thinks this is sus-

picious and made the same argument on the original motions. It creates no presumption and raises no suspicion. There is nothing strange about this and it is a practice frequently followed by related corporations and sometimes by those in no way related.

Subparagraph (a) of subdivision 2 of Point I attacks the adequacy of the proof of service of process upon McGolrick Bond & Mortgage Corp. and Malba Park, Inc., because the managing agent served is identical in the affidavits as " Miss Glass " and no Christian name is given. The same argument was made on the original motions. This is not an apparent defect in the language of the affidavits but if it were it would not be of avail to the plaintiff here. The presumption is that the court in the foreclosure action would not have rendered the judgment nor made the decree without service of the summons in the action in the manner prescribed by law and this presumption is here materially strengthened by the recital in the judgment that it appears from the prior proceedings and the papers on file in the action, including the affidavits of service, that all the defendants in the action had been served with a copy of the summons and complaint. To destroy the presumption of jurisdiction either the want of sufficient service of the summons must affirmatively appear from the record of the foreclosure action or the fact of nonservice of the summons should be established here in this action. Neither one nor the other has taken place. The affidavits of service are sufficient to comply with the Rules of Civil Practice. Plaintiff has produced no evidence to overcome them. Titles under judicial sales, particularly those under foreclosure proceedings, will not be lightly invalidated upon strained technicalities to enable a buyer to evade his bargain (*Berkowitz* v. *Brown,* 3 Misc. 1, 5, 6; *Steinhardt* v. *Baker,* 20 Misc. 470, affd. 25 App. Div. 197, affd. 163 N. Y. 410, 416; *Greenblatt* v. *Hermann,* 144 N. Y. 13, 18; *Matter of Field,* 235 App. Div. 689, *supra*; *Ferguson* v. *Crawford,* 86 N. Y. 609).

Subparagraph (b) of subdivision 2 of point I suggests the title is bad because the affidavits of service were apparently mistakenly signed by some one other than the person who had made the service and when he discovered he had signed the wrong paper he struck his name out and the person who made the service executed and verified the affidavit. There is no substance in this.

Point II is merely a statement that plaintiff has adequately established doubt of the marketability of the title to part of the subject property but the court has already ruled on this on the original motion and finds nothing new in the papers to lead it to change its opinion. In fact, only subparagraphs (a) and (b) of subdivision 1 of point I, and subparagraph (b) of subdivision 2 of point I suggest anything not fully considered by the court heretofore.

The application for permission to renew plaintiff's motion for summary judgment and to reargue defendant's cross motion for summary judgment will, accordingly, be denied, with $10 costs of the motion.

Submit order.